**In re WALNUT EQUIPMENT LEASING COMPANY, INC., Debtor.**

**In re EQUIPMENT LEASING CORPORATION OF AMERICA, Debtor.**

**Bankruptcy Nos. 97–19699DWS, 97–19700DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 3, 1997.

Francis J. Lawall, Pepper, Hamilton & Scheetz, L.L.P., Philadelphia, PA, for Unsecured Creditors' Committee.

Thomas E. Biron, Philadelphia, PA, for Summit Bank.

Charles M. Golden, Obermayer Rebmann Maxwell & Hippel, L.L.P.,Philadelphia, PA, for Debtors.

Joseph Minni, Philadelphia, PA, U.S. Trustee.

*OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court, in each of the above-captioned cases, is an Application to Employ Pepper, Hamilton & Scheetz, LLP, ("Pepper") as Counsel for the Official Unsecured Creditors' Committee ("Committee"). Disclosed in the applications is the fact that Pepper currently represents, in matters unrelated to these bankruptcy cases, the Chairman of the Committee, Summit Bank, whose status herein is that of an indenture trustee. According to the applications, because Pepper represents Summit Bank in these other matters, Pepper "cannot commence litigation against or take an adverse position to Summit Bank" in these bankruptcy cases. Based on this disclosure, the United States Trustee ("UST") objects to Pepper's employment. A hearing was held on the applications after which I took the matter under advisement.[1] The parties have filed post-hearing memoranda and the matter is ripe for decision. Upon consideration and with the caveat noted below, I grant the applications.

**BACKGROUND**

On August 8, 1997, Equipment Leasing Corporation of America ("Equipment") and its parent company, Walnut Equipment Leasing Company, Inc. ("Walnut") filed Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code.

On August 21, 1997, the UST appointed the Committee to represent the unsecured creditors of both debtors. The Committee convened and elected Summit Bank as its chairperson. Summit Bank is the Indenture Trustee with respect to certain debt "certificates" issued by the debtors. *See* Memorandum of Law in Support of Application to Employ Pepper, Hamilton & Scheetz LLP as Counsel for the Official Unsecured Creditors' Committee at 1–2; Memorandum of Law of the United States Trustee to Objection to Application of Official Committee of Unsecured Creditors to Employ Counsel at 2 n. 2.

---

1. At the hearing, recognizing the need for immediate Committee action, the parties agreed to the entry of an Order allowing Pepper to serve as counsel to the Committee for a thirty day period or until I issued a ruling on the applications, whichever was shorter. In so ordering, I found that, at this stage of the cases and for this short period of time, Pepper's relationship with Summit Bank did not inhibit its ability to fully represent the Committee.

*See also* Transcript, dated 9/2/97 (hereinafter "Tr."), at 84 (Counsel for Summit Bank stated that "Summit Bank is an indenture trustee on several debt issues by both of these debtors.").

At the same meeting, the Committee voted to retain Pepper as its counsel. Before this decision was made, Pepper disclosed to the Committee that it represents Summit Bank in matters unrelated to the bankruptcy cases and that, because of such representation, it will not sue Summit Bank or take a position adverse to it. Tr. at 75.

On August 27, 1997, the Committee filed their applications to employ Pepper. Attached to each of the applications is an identical affidavit by Francis Lawall, Esquire, on behalf of Pepper, stating that:

> My firm currently represents Summit Bank, the Indenture Trustee and Chairman of the Committee, in matters wholly unrelated to this bankruptcy proceeding and therefore, cannot commence litigation against or be adverse to Summit Bank.

Affidavit of Proposed Counsel for the Official Unsecured Creditors' Committee at ¶ 4. On September 2nd, the UST filed her objections to the applications. Two days later, I held the hearing on the applications. At the hearing, Mr. Lawall appeared on behalf of Pepper and Thomas Biron, Esquire, appeared on behalf of Summit Bank; Debtors' counsel and the UST were also present.

Mr. Lawall informed the Court that Summit Bank is a client of his firm and that the firm has an "understanding" with Summit that "we will not sue Summit Bank" and "will not take an adverse position vis-a-vis Summit Bank." Tr. at 71. He further explained, however, that Summit Bank has agreed that his firm "can do a memorandum, setting forth the various responsibilities and obligations of both indenture trustees[2] with respect to this—this particular indenture. And in the event that there are concerns or what have you with respect to this, ... not the committee counsel, but the committee itself, subject to whatever restrictions or what else

may exist, certainly have the ability to retain special counsel." Tr. at 74.

Mr. Biron, Summit Bank's counsel in these cases, provided the following additional information as to what Pepper and Summit Bank consider to be the limitations imposed upon Pepper by its representation of Summit Bank:

> [I]f the committee on the one hand decides that it wants to file a motion to extend exclusivity or it wants to support a debtor's motion to extend exclusivity, and Summit Bank decides, uh-uh, we want to reduce exclusivity. We want to file a plan. Pepper can take that position on behalf of the committee. That's not against Summit Bank. Okay.
>
> So in connection with the issues involved in the case, Pepper ... as representing the committee, will have no debilitation, and that's clear. It's only in connection with Summit Bank personally.
>
> *        *        *        *        *        *
>
> [I]f the committee decides to go one way in connection with the case, and Summit Bank wants to go another way, I have no problem—Summit Bank will have no problem with Pepper or any firm representing the committee in connection with doing what it wants to do in connection with the case.
>
> If, on the other hand, there does—there is, through further investigation, by the debtor, and debtors' counsel is fully not precluded by the rules of professional conduct from doing anything vis-a-vis Summit Bank, if they, through their own investigation determine that there is a cause of action against Summit Bank, as Summit Bank, well, presumably, the debtor will bring that cause of action. If the committee want to take a position, then, yes, the committee is going to have to hire special counsel in order to do it.
>
> But at that point, Fran Lawall or Pepper, whoever from Pepper is handling it, is in a position to say to the committee, look, if you want to be involved, and I think you

---

**2.** Apparently, there are two indenture trustees in this case, with Summit Bank having the "larger share of the trust indenture." Tr. at 80.

ought to be, I got to hire special counsel for that. There's no problem with that.

Tr. at 87–89. On the issue of whether Pepper would be precluded from analyzing Summit Bank's dealings and transactions with the Debtors, Mr. Biron stated:

> Mr. Lawall's firm, as part of its duties to the committee, is going to review, examine, whatever the right word is, and summarize all material contracts that have a bearing on the case. And that includes the indentures in this case, from both indenture trustees and they're going to do it. They'll issue a summary to the committee, including Summit Bank. We have no problem with that.

Tr. at 90–91. In addition, when questioned specifically whether Pepper, in light of its representation of Summit Bank, would be precluded from identifying issues regarding the Bank that might require the appointment of special counsel so that they could be pursued, Mr. Biron indicated to the contrary, stating, with reference to Mr. Lawall, that "he's going to have to identify that for the committee if he learns about it." Tr. at 89–90.

Following the hearing, Mr. Lawall filed a supplemental affidavit in each of the Debtor's bankruptcy cases. In these affidavits, he stated that: (1) while Pepper "represents Summit Bank in certain commercial loan matters, primarily involving real estate transactions, it does not represent the Corporate Trust Department of Summit Bank which serves as the Indenture Trustee for certain certificate holders" in these bankruptcy cases; (2) Pepper has not represented and will not represent "Summit Bank, directly or indirectly, in connection with its role as Indenture Trustee" in these bankruptcy cases; and (3) during the course of these cases, Pepper "will not represent the Corporate Trust Department of Summit Bank in any matter." Supplemental Affidavit of Proposed Counsel for the Official Unsecured Creditor's Committee.

Subsequent to the hearing, on September 16th, the UST filed her post-hearing memorandum. Eight days later, the Committee and Summit filed replies thereto.

## DISCUSSION

The Committee has selected Pepper as its choice for counsel. It has done so with full knowledge that Pepper represents Summit Bank and has an "understanding" with Summit that the firm will not commence litigation against or be adverse to it. The sole objector to Pepper's appointment is the UST. She contends that, by virtue of the limitations imposed upon Pepper pursuant to its "understanding" with Summit Bank, Pepper represents an entity which has an "adverse interest in connection with the case" which is prohibited under 11 U.S.C. § 1103(b). This section provides:

> An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

11 U.S.C. § 1103(b).

Pepper and Summit Bank essentially assert two arguments in response to the UST's objection. Firstly, they contend that while the language of § 1103(b) precludes committee counsel from representing in connection with these cases other entities with adverse interests, it does not preclude committee counsel from representing such entities in matters unrelated to the bankruptcy case. Since Pepper does not currently, and agrees that it will not in the future, represent Summit Bank in connection with the case, they contend that § 1103(b) does not bar Pepper's employment as committee counsel. Secondly, they assert, without regard to their first argument, that Pepper is qualified to represent the Committee under § 1103(b) because the existence of an adverse interest has not been demonstrated by the UST. If, as the cases develop, an adverse interest arises, they contend that special counsel can be retained by the Committee as necessary.

Section 1103(b) was enacted in its present form in 1984. It previously read as follows:

> A person employed to represent a committee appointed under 1102 of this title may

not, while employed by such committee, represent any other entity in connection with the case.

As this language reveals, prior to 1984, the statute imposed a per se bar on any professional employed by the committee from representing any other entity in connection with the case. Significantly, however, the statute did not bar such professionals from representing other entities in matters unrelated to the case. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 104–5 (1977). U.S.Code Cong. & Admin.News 5963, 1977 WL 9628, at 226 ("[T]he bill requires that an attorney for a creditor's committee cease representation of creditors in connection with the case. It does not require the attorney to cease representation of the creditors in matters unrelated to the case. It merely sets out a mandatory anti-conflict of interest rule for each case.").

The Bankruptcy Amendments and Federal Judgeship Act of 1984 amended § 1103(b). Pursuant to this amendment, the first sentence was changed by substituting the words "An attorney or accountant" for "A person" and the phrase "an entity having an adverse interest" for the word "entity." [3]

The argument advanced by Pepper and Summit, that § 1103(b) bars representation of entities with adverse interests only in connection with the case but not in matters unrelated to the bankruptcy case, raises the issue of whether the phrase "in connection with the case" as currently used in the first sentence of the statute refers to the word "represent" or the word "interest." As the statute is construed by Pepper and Summit, the phrase refers to the word "represent." In other words, Pepper and Summit interpret the statute as if it were worded as follows: An attorney or accountant employed to represent a committee under section 1102 of this title may not, while employed by such committee, represent in connection with the case any other entity having an adverse interest. ·

The parties cite three cases which have addressed this issue. *See Daido Steel Co.,* *Ltd. v. Official Committee of Unsecured Creditors,* 178 B.R. 129 (N.D.Ohio 1995); *In re Caldor, Inc.,* 193 B.R. 165 (Bankr.S.D.N.Y. 1996); *In re Calabrese,* 173 B.R. 61 (Bankr. D.Conn.1994). · In two of these cases, the courts held that the statute, as currently worded, prohibits counsel for the committee from representing in connection with the bankruptcy case an entity having an interest adverse to the committee, but that it does not prohibit counsel for the committee from representing such an entity in matters unrelated to the bankruptcy case. *See Daido Steel Co., Ltd., supra,* at 131–132; *In re Caldor, Inc., supra,* 193 B.R. at 174–175. *See also* 5 Collier on Bankruptcy ¶ 1103.03 at 1103–9 (Lawrence P. King, ed., 15th ed.1996) (suggesting that the phrase "in connection with" in the first sentence of § 1103(b) refers to the word "represent" by stating that "[w]ith respect to attorneys and accountants, the committee may appoint such professional persons to represent the committee so long as any other party represented by such attorney or accountant in connection with the case does not have an adverse interest to the interests represented by the committee."). In the third case, the court rejected the notion that the only issue under § 1103(b) is whether, in the bankruptcy case itself, counsel for the committee represents an entity having an interest adverse to the committee, reasoning that as long as counsel continues to represent an entity with an adverse interest generally, it is immaterial that counsel does not represent the entity in connection with the bankruptcy case. *In re Calabrese, supra,* at 63 ("It is not material to this court that in the case itself, [counsel] will not represent BOB, Fleet and Centerbank, as long as [counsel] continue[s] to represent such creditors generally").

At this point in time, I find it unnecessary to decide this issue. Based upon the representations made at the hearing by Pepper and Summit Bank, I find merit in their second argument that there is no evidence in the record that Summit Bank has an interest adverse to the Committee. Because

---

**3.** In addition, the second sentence which deals specifically with creditors was added to the statute. That addition is not implicated here.

of my conclusion regarding this second argument, even if the bar in § 1103(b) against representing entities with interests adverse to the committee applies to all matters instead of being limited to matters connected to the bankruptcy case, Pepper's employment would still not be prohibited under the statute.

In order for Summit Bank to have an adverse interest that would preclude Pepper's employment under § 1103(b), there must be evidence "suggesting the likelihood of some actual dispute, strife, discord or difference" between the Committee and Summit Bank. *See In re National Liquidators, Inc.,* 182 B.R. 186, (S.D.Ohio 1995). Mere speculation or the potential that Summit Bank may, in the future, have an interest adverse to the Committee will not suffice to bar Pepper's employment. As the bankruptcy court stated in *In re Leslie Fay Companies, Inc.,* 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994), "[i]nterests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash."

Also, in deciding whether Summit Bank has an interest adverse to the Committee under § 1103(b), I am mindful that an inherent tension exists between the Committee and Summit Bank because of the relationship between them. It is the same type of inherent tension that exists between any committee and its members. In amending § 1103(b) to expressly state that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest," 11 U.S.C. § 1103(b), Congress apparently decided that such inherent tension is insufficient to constitute an "adverse interest" under the statute.

As the district court in *In re National Liquidators, Inc., supra,* recognized, one of the functions of a creditors' committee is to "investigate the legitimacy of creditors' claims" and to determine whether there are any actions that should be pursued by the estate against any creditor. 182 B.R. at 192. Since the committee's performance of these duties could result in information and conclusions that are adverse to the interest of the

creditor, an inherent tension exists between the committee and its creditors. If such a conflict were sufficient to preclude employment under § 1103(b), then the second sentence of the statute would be meaningless. Discussing this point, the district court in *In re National Liquidators, Inc.,* reasoned:

> It simply exceeds rational bounds to rule that an adverse interest exists merely because a committee member's or a creditor's transactions with the debtor will be investigated, or because a remote, speculative, hypothetical possibility exists that, in the future, the estate or the Committee may dispute the creditor's claim or bring a cause of action against the creditor. [citations omitted.] If the Court were to adopt this definition, then qualified attorneys would be barred from representing any creditor and his committee unless the committee were a special committee divested both of any power or duty to investigate the transactions of its constituents and of any responsibility to advise the Committee on the legitimacy of creditors' dealings with the Debtor and the Committee.

*Id.* Accordingly, the mere fact that Pepper represents Summit Bank and that the Committee has a duty to examine Summit Bank's transactions and dealings with the Debtors is insufficient to preclude Pepper's employment under § 1103(b).

The UST argues that the simultaneous representation of both the Committee and Summit Bank constitutes the representation of an adverse interest in connection with the case because the "understanding" between Pepper and Summit Bank, that Pepper will not commence litigation against the bank or be adverse to it, imposes limitations on Pepper's ability to represent the Committee and carry out its duties under § 1102. The "understanding" between Pepper and Summit Bank has two components: (i) the understanding that Pepper will not commence litigation against Summit Bank; and (ii) the understanding that Pepper will not be adverse to the bank.

As to the first component, that Pepper will not institute litigation against Summit Bank, there is no evidence that, at the present time, the Committee has any basis whatsoever for

suing Summit Bank. Accordingly, at this time, Pepper's agreement that it will not commence litigation against Summit Bank does not constitute a conflict of interest that interferes with Pepper's ability to represent the Committee. While the possibility exists that, in the future, the Committee may determine that it has cause to sue Summit Bank, if that occurs, even without Pepper's express agreement that it will not commence litigation against Summit Bank, Pepper's attorney-client relationship with Summit Bank would raise ethical and conflict of interest issues that would need to be addressed. *See e.g.*, Rule 1.7 of the Pennsylvania Rules of Professional Conduct.

However, the second, Pepper's agreement that it will not be adverse to Summit Bank, is not as easily disposed of as I find this component of the "understanding" to be somewhat vague. On its face, this agreement, as worded in the applications and in the affidavits submitted with the applications, appears to prohibit Pepper from taking any position adverse to Summit Bank.[4] Since, Pepper, as counsel for the Committee, would be charged with advocating the will of the Committee and not Summit Bank, this prohibition would present a conflict of interest for the firm whenever Summit Bank disagrees with the majority of the other members of the Committee. Moreover, as counsel for the Committee, Pepper would have responsibility for analyzing all claims against and transactions with the debtors, including those with respect to Summit Bank's indenture, and determining whether any basis exists for initiating an action based on the same. Again, a literal application of Pepper's articulated under-

standing with Summit Bank would appear to prohibit it from performing these duties since it is not allowed to be adverse to the Bank.

At the hearing, however, Mr. Lawall and Mr. Biron, on behalf of Pepper and Summit Bank, respectively, provided a more detailed description of the contours of Pepper's understanding with Summit Bank. Mr. Biron represented that Summit and Pepper's understanding does not impose any restrictions on Pepper's ability to advocate the will of the Committee, even where Summit Bank may take a position adverse to the Committee, so long as such action is not directed against Summit Bank in its individual capacity. Both counsel also represented that the understanding does not impose any restrictions or limitations on Pepper's ability to conduct a general investigation/analysis of, and draft a memorandum regarding, Summit Bank's transactions with the debtors.[5] Mr. Biron further explained that the understanding does not prohibit Pepper from identifying issues that might require action against Summit Bank. Relying on these representations,[6] I find that Pepper's representation of Summit Bank does not currently restrict or limit Pepper's ability to zealously perform its duty on behalf of the Committee. Therefore, I conclude that Summit Bank does not, at this time, have an interest adverse to the Committee under § 1103(b) and, consequently, that Pepper is not precluded from representing the Committee under that section.

In holding that Pepper is not precluded from representing the Committee under § 1103(b), I recognize that should an adverse

---

**4.** The UST suggests that the "understanding" will preclude Pepper from investigating any issue against the bank because "that action would be deemed adverse to the interests of Summit" and that it will prevent Pepper from "recommending to the Committee that it consider taking any action or position" against Summit Bank.

**5.** By Order dated September 26, 1997, I approved the appointment of an examiner in this case. As part of his or her duties, the examiner will be investigating and analyzing Debtors' transactions and dealings with Summit Bank. *See* Order dated September 26, 1997 at 6 (requiring examiner to investigate the "acts, conducts, assets, liabilities, and current financial condition

of the Debtors" and focus on, *inter alia*, any "misconduct in connection with the issuance by Debtors of debt securities pursuant to trust indentures[.]") The examiner, being disinterested, provides further assurance that Summit Bank's interactions with the Debtors and their impact upon the Debtors' estates will be thoroughly reviewed.

**6.** If my understanding of representations made to me by Messrs. Lawall and Biron as described above is incorrect, then my conclusion that Pepper's representation of Summit Bank does not, at this time, present any impediment to Pepper's ability to fully perform its duties as Committee counsel might be different.

interest arise in the future on the part of Summit Bank, the issue of Committee representation may arise anew.[7] Undoubtedly, there are other law firms in this locale who could and would now capably represent the Committee in these cases and who are not subject to an "understanding" with a Committee member that could potentially limit its representation. However, the Committee has selected Pepper as its counsel of choice and, having found that Pepper's employment does not violate § 1103(b), I must honor that choice. *See In re Heck's, Inc.,* 83 B.R. 410, 416 (S.D.W.Va.1988) (*quoting Kanter v. Robertson,* 102 F.2d 92, 93 (4th Cir.1939)) ("It has long been held that '[t]he relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously. Only in the rarest of cases should the [client] be deprived of selecting his own counsel ...' "); *In re Caldor, Inc.,* 193 B.R. 165, 170 (Bankr.S.D.N.Y.1996) ("Public policy favors permitting parties to retain professionals of their choice."); *In re Brennan,* 187 B.R. 135, 149–50, 154 (Bankr. D.N.J.1995) (*citing Panduit Corp. v. All States Plastic Manufacturing Co., Inc.,* 744 F.2d 1564, 1576–77 (Fed.Cir.1984)) ("there is a presumption in favor of a party's right to counsel of choice").

Accordingly, in reliance upon the representations of Pepper and Summit Bank as to Pepper's ability to fulfill its duties as Committee counsel, I approve Pepper's appointment as counsel for the Committee under

§ 1103(b). An Order consistent with this Memorandum Opinion shall be entered.

7. I am not commenting upon whether it would be appropriate should this situation arise for the Committee to employ special counsel to handle its dealings with Summit Bank and to continue employing Pepper as its counsel for all other matters. I do advise Pepper, however, that if it becomes necessary to either appoint special counsel to represent the Committee in its dealings with Summit Bank or appoint new counsel altogether because of Pepper's relationship with Summit Bank, I will require Pepper to devote its time to educating and transferring the file or whatever portion of it is necessary to such counsel and will not approve compensation to Pepper for the time which it spends on the same. While the Committee should be permitted its choice of counsel, I do not believe that the debtors' estates should be forced to pay for additional attorneys' fees caused by the need to change counsel or hire

special counsel when the possibility that such a situation could arise in the future is known before counsel's appointment is even approved. Pepper is fully aware that a situation could occur in which it will refuse to represent the Committee because of its representation of Summit Bank and yet it still seeks to secure its appointment as counsel for the Committee. As such, it is only fair that any additional attorneys' fees caused by the need for other counsel be borne by Pepper and not the estates. Moreover, although I am approving Pepper's employment under § 1103(b), Pepper may be denied compensation under § 328(c) if "during [its] employment under section ... 1103 ... [it] is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which [it] is employed." 11 U.S.C. § 328(c).